## FITCHBURG AND WORCESTER RAILROAD COMPANY *vs.* SAMUEL HANNA & another.

In an action by a railroad corporation to recover freight of goods over a continuous line of transportation, of which their road forms a part, and the freight for which transportation is to be divided among the proprietors of the different parts of the line in certain stipulated proportions, the defendant may set off damage to the goods by the fault of the carrier on any part of the line.

Proprietors of a railroad are liable as common carriers for goods received by them, to be transported over their road for hire, though not yet laden on their cars.

ACTION OF CONTRACT for freight of goods from New York to Fitchburg. Trial in the court of common pleas, before *Byington, J.,* to whose rulings the defendants alleged exceptions, the substance of which appears in the opinion.

*F. H. Dewey,* for the defendants.

*N. Wood,* for the plaintiffs.

MERRICK, J. The plaintiffs' road extends only from Sterling Junction to Fitchburg; but their road, together with the railroads of certain other corporations and the steamboats of the Commercial Steamboat Company, constitutes one continuous line of transportation between the latter place and the city of New York. By the mutual agreement of all these companies, the freight earned on the whole route is to be divided between them in certain stipulated proportions. In April 1854, Odell, who was the agent of the Steamboat Company, contracted with the defendants to transport for them sixty eight bales of rags from New York to Fitchburg, at the rate of $5.50 per ton; and, in pursuance of this agreement, the rags were delivered to the Steamboat Company on their pier in the city of New York, and were subsequently carried over the line and delivered to the defendants at Fitchburg.

If this service had been performed, and no special agreement had been made in relation to the terms upon which it should be done, each of the several parties who contributed towards it would have been entitled to a reasonable compensation, in proportion to the service which they respectively rendered, and would

have been liable only for such failures and delinquencies as occurred on their own portions of the line. But the plaintiffs now claim to recover for the freight of the rags over the entire route, at the rate stipulatèd for in the contract made by Odell. They thus recognize that contract as one made on their account, and assert their right to insist upon and avail themselves of its provisions. This claim is assented to by the defendants, who have made no objection, as they undoubtedly might have done, to the maintenance of this action, that other parties, equally interested with the plaintiffs, are not joined with them in its prosecution. Under these circumstances, Odell must be considered as having acted, in making the contract, as the agent of all the parties by and for whom the freight was earned. And as they thus became jointly entitled to recover compensation for the service performed, they in like manner were made responsible for the damages consequent upon the failure, in whatever part of the line it occurred, to transport the goods in safety.

It is in this essential particular, of a special contract entered into by the parties, that this case is clearly distinguishable from that of *Nutting* v. *Connecticut River Railroad*, 1 Gray, 502, where the obligation imposed upon the defendants, in reference to goods to be carried to New York, concerning which they made no express stipulations, was held to be only the safe transportation of them over their own road, and delivery of them to the proper carriers to be forwarded towards their ultimate destination. But the obligation which, in the absence of any express stipulation, would be implied by law, may always be varied and enlarged, as was done in the present case, by an express agreement; and then the rights and duties of the parties to it are to be enjoyed and enforced in conformity with what is required by its provisions.

But the plaintiffs contend that if they are thus, under the contract made by Odell as the agent of all the parties engaged in the business of transporting merchandise upon and over the one common continuous line, responsible for the safe carriage and delivery of the goods received for that purpose from the defendants, the defence relied on cannot be maintained, because no

injury was done to the bales of rags after their liability as common carriers first attached. And, in conformity to their wishes, the jury were advised by the judge who presided at the trial, that it did not commence while the bales were lying on the pier or in the warehouse of the Steamboat Company, nor until they were actually shipped on board the vessel. This instruction, we think, cannot be sustained. The general and well settled rule, in relation to the responsibility of a common carrier, is, that it commences whenever and as soon as goods have been delivered to and accepted by him solely for the purpose of their transportation. And this is to be so, although they are not immediately put *in itinere*, but are first, for his own convenience, and as only preparatory to the voyage or journey, temporarily deposited on his wharf or in his store. In such case, the deposit is a mere accessory to the carriage, and does not postpone the · commencement of his liability as a common carrier to the time when they shall be actually put in motion towards the place of their destination. Story on Bailments, §§ 534, 536. And such should have been the instructions given to the jury; under which they would have determined, if there could have been any doubt upon the evidence submitted to them, both in what relation the bales of rags, when delivered to the Steamboat Company, as shown by the receipt of their agent Tourtellot, were accepted by them, and the precise period of time when their liability as common carriers commenced.

In the case of *The Norway Plains Company* v. *The Boston & Maine Railroad,* 1 Gray, 263, it was upon much consideration, and for reasons very fully set forth by the court, held, that the liability of railroad corporations as common carriers terminates when the goods transported are unladen from the cars, and placed on the platform in their depot in a suitable and convenient position to be received and taken away by the owner or consignee. And it was strenuously urged upon us, in the argument for the plaintiffs, that a similar rule should prevail in reference to the commencement of their liability; and that they are to be considered only as warehousemen, while the goods remain on the wharf, or in a depot or warehouse, and

until they are in fact laden in the vessel, car or carriage in which they are to be conveyed. But the reasons which induce, and indeed render necessary, the adoption of that rule in the former case, are inapplicable to the latter. When goods are brought and delivered to a party for transportation, he can determine for himself in what relation he will receive them. If he is a common carrier, he is certainly required by law to take and transport goods tendered to him for that purpose. But he is to have a reasonable opportunity to make the necessary preliminary preparation for that service; and he can therefore, if he chooses so to protect himself, whenever it is necessary and proper that he should have some intermediate time for preparation before proceeding on the voyage or journey, receive the goods, and keep them during such intervening period as a warehouseman, and not as a common carrier. It is obvious from these considerations, that the well established rule respecting the commencement of his liability in the latter relation is as well adapted to the recent as to preceding modes of conveyance; and is as safe for the carrier as it is certain and convenient to owners and consignees. And therefore, no exigency having arisen to require it, there is no reason why any modification of the rule should be adopted.                    *Exceptions sustained.*